UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Rebecca Moore, *individually and as natural guardian and next friend to* Jane Doe, | |
| Plaintiffs, | No. 3:21-cv-50036 |
| v. | Judge Iain D. Johnston |
| Freeport Community Unit Sch. Dist. No. 145; Anna Alvarado, *individually and in an official capacity as Superintendent of the District*; Nita White, *individually and as agent*; Derrick Allen, *individually and as agent*; Stacy Green, *individually and as agent*; Carmen Madigan, *individually and as agent*; and John/Jane Does 1-10; | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Moore brings suit on behalf of her daughter, Jane Doe, a minor, against Freeport Community Unit School District No. 145, and various staff and administrators for violations of 20 U.S.C. §§ 1681-1688 ("Title IX"), 42 U.S.C. § 1983, and state law claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress related to the student-on-student sexual assault and sexual harassment of her daughter who was in kindergarten. Defendants' motion to dismiss [20] is granted in part and denied in part.

BACKGROUND

Jane Doe was a kindergarten student at Jones-Farrar International World School ("the School") in Freeport Community Unit School District No. 145 ("the District") for the 2019-2020 school year. Dkt. 1, ¶¶ 1, 18. Derrick Allen, Doe's teacher, noticed she began experiencing

1

behavioral issues during the week of November 18, 2019. *Id.* ¶ 19. Moore, Doe's mother, similarly noticed she began to act "disengaged and angry" and that she became "sullen and introverted when her mother asked what was troubling her." *Id.* ¶ 20. Doe revealed to her mother that one of her classmates, a boy ("JJ") "was picking on her and being mean," eventually disclosing to her mother that he had "touched her underwear, inside her pants." *Id.* ¶¶ 21-24. Doe told her mother that JJ touched her on three different occasions throughout the school day, occurring in her main classroom, their Spanish classroom, and the School library while teachers Allen and Stacy Green were present. *Id.* ¶ 24.

On November 22, 2019, Moore called Allen and reported what Doe said had happened; Allen said he would contact Principal DeJong. *Id.* ¶¶ 26, 28. Moore took her daughter to the Emergency Room for an examination, and medical staff reported the incidents to the Illinois Department of Children and Family Services, as well as local law enforcement. *Id.* ¶¶ 29-30. Doe complained of her stomach hurting and pain when she urinated, as well as loss of appetite and fever. *Id.* ¶¶ 31-32. The Emergency Room determined that Doe had a urinary tract infection and prescribed an antibiotic. *Id.* ¶ 33. Doe had trouble sleeping that night, complained of nightmares, and told Moore she never wanted to go back to school. *Id.* ¶¶ 34-35. Over the next few days, Doe continued having difficulty sleeping, frequently burst into tears without provocation, and told Moore she did not want to go to school or be hurt by JJ again. *Id.* ¶¶ 36-38.

Principal DeJong called Moore to inform her of the "safety plan" the School would put in place, wherein JJ would be kept separate from Doe and he would never be without adult supervision at school. *Id.* ¶¶ 39-40. Doe did not attend school for the next two days because of her fever resulting from the infection, and the School was closed the rest of the week for the

Thanksgiving holiday. *Id.* ¶¶ 41-42. During this time, she continued to suffer from nightmares, disturbed sleep, and periods of inconsolable crying. *Id.* ¶ 44.

Doe returned to School on December 2, 2019, based on the reassurances of DeJong. *Id.* ¶ 45. Moore walked Doe into school that day and observed JJ in the hallway, unsupervised, with another female student. *Id.* ¶ 46. Doe began to panic, but Principal DeJong reassured Moore that the "safety plan" would be implemented. *Id.* ¶¶ 47-48. From December 2 through December 6, Doe reported seeing JJ daily; at these times, JJ he called her names. *Id.* ¶ 51. Doe alleges that a teacher was nearby whenever this happened (Allen was out that week, with Carmen Madigan acting as his substitute) and that the teachers did nothing to stop JJ's behavior. *Id.* ¶¶ 52-53. During the School's Christmas Program on December 7, 2019, Moore witnessed Defendants place JJ near Doe, contrary to the "safety plan." *Id.* ¶ 54.

During the month of December, JJ continued calling Doe names at school. *Id.* ¶ 55. Additionally, Doe reported that other students joined JJ in sexually harassing her by saying she was a "boy" and that she "had a penis." *Id.* ¶ 56. Moore scheduled counseling services for Doe, which were not able to begin until December 31, 2019. *Id.* ¶ 77. On December 19, 2019, Moore again contacted Allen regarding the bullying by both boys and girls in her class, as well as Doe's continuing to see JJ on a daily basis. *Id.* ¶ 57. The next day, Allen called Moore to pick up Doe from school because she had been acting out during an assembly; Doe told Moore that she was being teased and tormented by JJ and others, and that no one at the school would do anything to help. *Id.* ¶¶ 58-59. That was the final day of school before winter break, and the last day that Doe attended the School. *Id.* ¶ 60. At no point did any Defendants speak with Doe about what JJ had done to her or about any of the continued bullying and harassment. *Id.* ¶ 73. Defendants never investigated the situation. *Id.* ¶ 74.

Moore arranged for Doe to attend a private school beginning on January 2, 2020. *Id.* ¶¶ 61-62. Doe began weekly counseling sessions at this time, and continues having weekly counseling. *Id.* ¶ 78. Doe also continues to suffer from nightmares and panic attacks as a result of trauma, even so far as taking medication to help her sleep so she is not so tired during the day. *Id.* ¶¶ 81-82, 85. One panic attack occurred at her new school when she saw a picture of a boy pulling a girl's hair. *Id.* ¶ 84. Doe finished the school year at the new school, and the school recommended she repeat kindergarten for the 2021-2022 school year due to her trauma resulting from the situation with JJ in the fall of 2019. *Id.* ¶¶ 63-66.

Meanwhile, Moore sought answers from the School and the District. On January 6, 2020, Moore requested a meeting with District Superintendent Anna Alvarado, but was instead directed to meet with District Director of Equity, Nita White. *Id.* ¶¶ 66-67. White spoke with Moore later that day and said she would investigate the situation, only to later explain that she could not discuss anything with Moore because Doe was no longer enrolled in the District schools. *Id.* ¶¶ 69-71. White suggested Moore submit a request for payment of Doe's medical bills to the district via email and offered to forward that request to the appropriate office. *Id.* ¶ 72. Moore also became aware that as of February 4, 2020, JJ was being accompanied by an aide at all times while in School. *Id.* ¶ 86. Moore further states that she has had to miss work to take Doe to counseling and occasionally to pick Doe up from school when she had panic attacks. *Id.* ¶ 91.

Moore filed this lawsuit on January 29, 2021, alleging violations of Title IX, Section 1983, and state law torts of negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6).

ANALYSIS

Rule 8 requires a plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The statement must give the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. A plaintiff's well-pleaded factual allegations must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must also plausibly suggest that the plaintiff is entitled to relief, which "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The federal pleading standard does not require the plaintiff to plead every element; plaintiff need only plead enough facts to elevate his claim from conceivable to plausible. *Twombly*, 550 U.S. at 570; *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("Complaints need not plead law or match facts to every element of a legal theory."). The Court accepts as true all of the plaintiff's well-pleaded allegations and draws all reasonable inferences in the light most favorable to the plaintiff. *See Calderone v. City of Chicago*, 979 F.3d 1156, 1161 (7th Cir. 2020); *Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 933 F.3d 806, 809 (7th Cir. 2019). The movant bears the burden on a motion to dismiss. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

### *Title IX (Count I)*

Defendants move to dismiss Count I against the District for failure to state a claim upon which relief can be granted. Dkt. 20, at 3-4. Under Title IX claims based on student-on-student harassment, schools and districts that receive federal funding are "liable in damages only where

they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 650 (1999) (finding that Davis adequately alleged a violation of Title IX against the local school board for deliberate indifference to student-on-student harassment). To state a claim, "a plaintiff must establish sexual harassment of students that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Id.* at 651; *Gabrielle M. v. Park Forest-Chicago Heights*, 315 F.3d 817, 823 (7th Cir. 2003).

Single instances of misconduct or "simple acts of teasing and name-calling" generally are not enough to be severe and pervasive. *Davis*, 526 U.S. at 652. Rather, the misconduct must "be serious enough to have the systemic effect of denying the victim equal access to an educational program or activity." *Id.* Also, the alleged misconduct "must take place in a context subject to the school district's control," such as "during school hours and on school grounds." *Id.* at 645-46. When the school has actual notice of objectively offensive student-on-student harassment, Title IX liability only extends to situations "where the [federal funding] recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 648; *Gabrielle M.*, 315 F.3d at 825 (affirming a grant of summary judgment to defendant school district on Gabrielle's Title IX claim of peer-on-peer harassment because the district's response was not clearly unreasonable). This does not require schools to remedy the misconduct as the victims would see fit; rather, it requires that the school's response not be clearly unreasonable, which is a higher standard than reasonableness. *Davis*, 526 U.S. at 648-49.

6

Here, Moore alleges that Doe was sexually assaulted by JJ on three separate instances, each at a different location in the school building, during school hours when teachers were present. And after the assaults, Doe was sexually harassed by JJ and others on a daily basis. Further, she details the physical and psychological harm to Doe that resulted from the assaults, which included negative behavioral changes, a urinary tract infection, missed days of school, nightmares, and sleeplessness—all leading Doe to transfer to a private school over winter break. She continues to experience psychological symptoms and sees a counselor. And Doe was advised to repeat kindergarten. Moore sufficiently alleges that the sexual assaults and harassment Doe experienced at School had a "concrete, negative effect on [Doe's] education." *Gabrielle M.*, 315 F.3d at 823 (considering examples such as dropping grades, becoming homebound or hospitalized, physical violence, and absenteeism). Although the children involved here are very young and perhaps "still learning how to interact appropriately with their peers," *Davis*, 526 U.S. at 652, taken as a whole, the allegations plausibly describe severe and pervasive conduct.

Moore also alleges that she reported the assaults to Allen by telephone on November 22, 2019, that Allen then informed DeJong, and that on November 24, 2019, DeJong told Moore about the "safety plan" that would be put in place in response to the assaults. Moore again contacted Allen on December 19, 2019, to report the continued harassment of Doe at School by JJ and others, despite the existence of the safety plan. This adequately put the District on notice, and once it has notice, it also had a duty to act. *See Gabrielle M.*, 315 F.3d at 824.

The crux of Defendants' motion is that the District's response was not clearly unreasonable, and that it did not have the "systemic effect of denying the victim equal access to an educational program or activity." *Davis*, 526 U.S. at 652. The Court disagrees. Although Title IX does not require schools to "detect" or "remedy" student-on-student harassment, both the

7

Seventh Circuit and the Supreme Court acknowledge that schools have a duty to act on this type of harassment once they are put on notice. *Compare* dkt. 20, at 3, *with Davis*, 526 U.S. at 648, *and Gabrielle M.*, 315 F.3d at 824. Moore alleges that the District violated Title IX through its "deliberate indifference to known acts of sexual assault and harassment committed by other students against Plaintiff Jane Doe while they were all under the District's control." Dkt. 1, ¶ 101. Defendants appear to argue that making a plan was sufficient to comply with Title IX. Dkt. 20, at 4.

After Principal DeJong told Moore about the "safety plan," which included constant supervision for JJ and attempts to keep JJ and Doe separate, Moore personally observed that JJ was unsupervised in the hallway the very next morning. And Doe reported that she saw JJ on a daily basis, and that he continued to harass her. Moore alleges that Defendants did nothing to address or stop JJ's conduct. As a result, Moore plausibly alleges that the District "failed to properly investigate the allegations" after both Doe and Moore disclosed them to Doe's teachers, that it "failed to institute a safety plan or any other corrective measures," "failed to properly implement a safety plan once it was instituted," and "repeatedly ignored information and repeated reports of bullying, sexual harassment, and sexual assaults." Dkt. 1, ¶ 99.

This stands in stark contrast to the facts of *Gabrielle M.*—a decision on which Defendants rely, and which the court decided at summary judgment.[1] In *Gabrielle M.*, the school

---

[1] The Court urges litigants to rely on cases that were decided in the same procedural posture. In memoranda supporting or opposing a motion to dismiss, cases that were decided on summary judgment (or on appeal of summary judgment) are only moderately helpful because of the differing standards. *See, e.g.*, *Winchester v. Ryder Integrated Logistics, Inc.*, No. 19-CV-01356-NJR, 2020 U.S. Dist. LEXIS 148760, *6-7 (S.D. Ill. Aug. 18, 2020) (discussing what is required to state a claim under the FMLA versus what is required to *prevail upon* a claim under the FMLA); *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("The question presented by a motion to dismiss for insufficient pleadings does not turn on the controls placed on the discovery process.") (syllabus). This applies to the inverse as well. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) (An opinion decided on a motion to dismiss "is of no relevance here, since it involved not a Rule 56 motion for summary judgment but a Rule 12(b) motion to

district disciplined the offending student and took steps to prevent future conduct, including suspending him from recess, placing him in time out, temporarily removing him from class, calling his mother, sending him to the principal's office, giving him detention, sending him to the school psychologist, suspending him from school for two days, transferring him to a different class, and placing him at an isolation table for two weeks during lunch and recess. *Gabrielle M.*, 315 F.3d at 824. Indeed, Moore alleges that the School did nothing, that teachers stood by while the harassment happened, and that the District effectively condoned the misbehavior.

Defendants argue that "[e]ven by Moore's own allegations, the District has complied with Title IX." Dkt. 20, at 4. A principal telling a parent that the school is implementing a safety plan does not automatically absolve the school of liability under Title IX. Title IX still requires that a school not unreasonably respond to known peer harassment. *Davis*, 526 U.S at 649. And yet, Defendants base their motion to dismiss on the assertion that under *Gabrielle M.* and *Davis* "there is no reason that a court should not hold a response is not 'clearly reasonable' in granting dispositive motions, such as a motion to dismiss." Dkt. 20, at 3 (quoting *Gabrielle M.*, 315 F.3d at 824 (citing *Davis*, 526 U.S. at 649)).

In *Davis*, the dissent argued that "a reasonableness standard, regardless of the modifier, transforms every disciplinary decision into a jury question." 526 U.S. at 679 (Kennedy, J., dissenting). In response to that argument, the majority of the Court wrote, "In an appropriate case, there is no reason why courts, on a motion to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law." 526 U.S. at 649; *cf. Gabrielle M.*, 315 F.3d at 824. Defendants misinterpret this statement. This statement only means that depending on the facts, a court could decide, as a matter of law,

---

dismiss on the pleadings. The latter, unlike the former, presumes that general allegations embrace those specific facts that are necessary to support the claim." (cleaned up)).

whether an educational institution's response was not "clearly unreasonable." Here, the allegations do not allow this Court to make that legal determination in Defendants' favor.

Defendants further argue, albeit in their reply memorandum, that the District was not deliberately indifferent because the school discussed it and created a plan once they were on notice. They misconstrue Moore's argument as complaining "that the safety plan was not enacted to their satisfaction," which they argue "requires that the peer-on-peer harassment be remedied." Dkt. 28, at 4. The *Davis* Court acknowledged this argument, as it was raised by the dissent, and clarified that its holding did not mean that schools could "avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." 526 U.S. at 648 (disagreeing with Monroe County Board of Education's argument that "nothing short of expulsion . . . would protect school systems from liability" if student-on-student harassment was recognized under Title IX). Nowhere did Moore allege that the District should have engaged in a particular action, that JJ be expelled, or that the situation should have otherwise been remedied. On the contrary, Moore alleged that she sent her daughter back to school after she learned of the "safety plan" that DeJong was putting in place. It isn't that she was not satisfied with the safety plan—it's that the District did not actually enact the alleged plan, thereby allowing the harassment to continue the rest of the semester. That the District allegedly did not follow its own safety plan—after harassment continued for weeks—is enough to allege deliberate indifference, and enough to allege that the District's response was clearly unreasonable. Defendants' motion to dismiss count I is denied.

### *Section 1983 (Counts II and III)*

Defendants move to dismiss Count II against the individual defendants and Count III against the District for failure to state a claim because a Title IX claim cannot be the basis for a § 1983 action and Plaintiffs have not sufficiently alleged a Fourteenth Amendment claim.

Section 1983 "provides a remedy for violations of federal rights committed by persons acting under the color of state law." *First Midwest Bank*, 988 F.3d at 986. Thus, a § 1983 claim requires that a federal constitutional or statutory injury exists. 42 U.S.C. §1983. As a threshold matter, the Court reviews the claims presented to determine which constitutional rights are allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 394 (1989). A careful review is necessary because a complaint should not be dismissed for naming an improper legal cause of action. *Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 756 (7th Cir. 1999) (citing wrong legal theory is not a basis for dismissal).

<u>Count II</u>

On its face, Count II alleges that "Defendants deprived Plaintiff Jane Doe of rights, privileges, or immunities guaranteed to her by Title IX and the 14th Amendment of the U.S. Constitution." Dkt. 1, ¶ 104. This count also incorporates other parts of the complaint, including the language in Count I (based on Title IX) that Defendants "deprived [Doe] of her access to the educational opportunities or benefits provided by the school." *Id.* at ¶ 100. Count II is brought against the individual defendants only.

Title IX bars sex discrimination in educational institutions receiving federal money: "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Seventh Circuit has held that "a

Title IX claim can only be brought against a grant recipient and not an individual." *Smith v. Metro. Sch. Dist. Perry Twp.*, 128 F.3d 1014, 1019 (7th Cir. 1997). Indeed, Title IX does not authorize suits against school officials, teachers, and other individuals. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (holding that Congress did not intend Title IX to preclude § 1983 constitutional suits). Therefore, Count II, against individual teachers and administrators, cannot be based on a violation of Title IX.

In addition to the alleged federal statutory violation above, Moore also alleges a constitutional violation of the right to be free from sex discrimination under the equal protection clause.[2] Specifically, she alleges that "Jane Doe's rights under the Fourteenth Amendment were violated by Defendants' deliberate indifference to known acts of sexual assault and sexual harassment through its inadequate and/or lack of implementation of the District's written policies and procedures relating to claims of sexual harassment." Dkt. 25, at 9. To state a claim of equal protection based on sex under § 1983, a plaintiff must allege that defendants "discriminated against her based on her membership in a definable class" and that defendants "acted with a nefarious discriminatory purpose." *Doe v. Evergreen Park Elem. Sch. Dist. 124*, No. 17-CV-3774, 2017 U.S. Dist. LEXIS 212909, *27 (N.D. Ill. Dec. 29, 2017) (quoting *D.S. v. East Porter County. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015)). Additionally, because "all equal protection claims are based on the premise that members of a protected class have been treated differently than others who are similarly situated," a plaintiff must allege that defendants treated others in the same class differently. *Doe*, 2017 U.S. Dist. LEXIS 212909, *29 (quoting *Vidovic v. Mentor City Sch. Dist.*, 921 F. Supp. 2d 775, 794 (N.D. Ohio 2013).

---

[2] Moore clarifies the Fourteenth Amendment claim as one under the Equal Protection clause in her response. Dkt. 25, at 9-10.

Moore alleges that Doe is a female student, but she has made no such allegations as to how Doe was treated differently than others who complained to the School or District about sexual assault and harassment. And she has not alleged any facts from which the Court could draw a reasonable inference of discriminatory intent. Count II is dismissed without prejudice, with leave to file an amended complaint by December 6, 2021.

*Count III*

Count III is brought against the District, based on *Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978). This Count similarly alleges that "Defendants deprived Plaintiff Jane Doe of rights, privileges, or immunities guaranteed to her by Title IX and the 14th Amendment of the U.S. Constitution," and incorporates the allegation that Defendants "deprived [Doe] of her access to the educational opportunities or benefits provided by the school." Dkt. 1, ¶¶ 109, 100.

A Section 1983 *Monell* claim cannot be based on a federal statutory violation of Title IX. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255-56 (2009). This is nearly identical to the claim alleged in Count I, and therefore duplicative. In *Fitzgerald*, the Court held that "[section] 1983 equal protection claims may be brought against individuals as well as municipalities and certain other state entities" based on the same set of facts as a Title IX claim. *Fitzgerald*, 555 U.S. at 257. Moore seems to argue that her Section 1983 claims should be allowed to proceed for this reason alone. But in *Fitzgerald*, there was a properly alleged constitutional violation of the equal protection clause, and that is why the Section 1983 claim was allowed to proceed. It was not allowed to proceed based on the violation of Title IX. Thus, Moore has no *Monell* claim against the District based on Title IX.

Here, Moore also alleges a Fourteenth Amendment *Monell* claim, alleging that "Jane Doe's rights under the Fourteenth Amendment were violated by Defendants' deliberate

indifference to known acts of sexual assault and sexual harassment through its inadequate and/or lack of implementation of the District's written policies and procedures relating to claims of sexual harassment." Dkt. 25, at 9.

To state a claim under § 1983 for local governmental liability under *Monell*, a plaintiff must allege that her harm resulted from a constitutional violation and that the local governmental body is responsible for the violation. *Collins v. City of Harker Heights*, 503 U.S. 115, 270 (1992). The District, as a local governmental body, "may be held liable for its own violations of the federal Constitution and laws." *First Midwest Bank*, 988 F.3d at 986 (quoting *Monell*, 436 U.S. at 690-91 (1978)); *Hildreth v. Butler*, 960 F.3d 420, 436 (7th Cir. 2020) (recognizing that respondeat superior liability does not apply to Section 1983 claims). Local governmental liability under § 1983 is limited to violations caused by (1) an express policy, (2) a widespread practice so well-settled it becomes a custom, or (3) a person with final policymaking authority for the local governmental body. *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019). *Monell* imposes a high bar for liability; the local governmental body's action must have been taken with "deliberate indifference" to one's constitutional rights and must have been the "moving force" behind the constitutional violation. *First Midwest Bank*, 988 F.3d at 987. Deliberate indifference goes beyond a failure to act; the conduct must rise to the level of criminal recklessness. *Flores v. City of S. Bend*, 997 F.3d 725, 729 (7th Cir. 2021).

Here, Moore alleges that the District maintained objectively deliberate policies or practices; failed to adopt sufficient policies; failure to implement and train on policies regarding sexual harassment; and failed to train on discipline and sexual harassment prevention. Dkt. 1, ¶ 110. But these are conclusions and not facts. Moore's own allegations acknowledge that when she reported the assault to Doe's teacher, the teacher contacted the principal, and the principal

developed a "safety plan." Moore alleges that Defendants' inaction with regards to the plan and their knowledge of the assault and harassment in general constituted action with deliberate indifference. But Moore does not plausibly allege the constitutional violation based on equal protection. And because the only constitutional violation alleged is one of Fourteenth Amendment Equal Protection, which the Court dismissed above, there is no constitutional violation alleged and thus there can be no local governmental body liability. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Sallenger v. City of Springfield*, 630 F.3d 499, 505 (7th Cir. 2010) ("Accordingly, because there is no underlying constitutional violation, the City cannot be liable under *Monell*."). This Court's analysis need not go any further. Count III is dismissed without prejudice.

### *State Law Torts (Counts IV, V, and VI)*

Defendants initially moved to dismiss Counts IV, V, and VI as being time-barred by the one-year statute of limitations in the Illinois Tort Immunity Act. Dkt. 20, at 6-7. However, in reply, Defendants concede that the one-year statute of limitations does not apply to these claims brought by the minor Jane Doe. Dkt. 28, at 12-13. Defendants make no arguments about the substance of these claims. Additionally, Defendants argue that the state law claims as brought individually by Moore should be dismissed because the statute of limitations is not tolled as to Moore. *Id.* This argument was not raised in Defendants' motion to dismiss, and therefore it is forfeited. *See Gold v. Wolpert*, 876 F.2d 1327, 1331 n.6 (7th Cir. 1989) ("It is well-settled that new arguments cannot be made for the first time in reply."). Having allowed Plaintiffs to proceed on a federal claim, the Court will exercise supplemental jurisdiction over these related state law claims. The motion to dismiss Counts IV, V, and VI is denied.

15

CONCLUSION

Defendants' motion to dismiss [22] is granted without prejudice as to Counts II and III. The motion is denied as to Counts I, IV, V, and VI. Plaintiff is given until December 6, 2021 to file an amended complaint. If no amended complaint is filed by then, the claims dismissed without prejudice will be dismissed with prejudice. Moreover, if no amended complaint is filed by December 6, 2021, then Defendants must file answers by December 20, 2021.

Date: November 8, 2021      By: _____
                                                                 IAIN D. JOHNSTON
                                                                 United States District Judge